# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**MANUEL VALDEZ,**

     **Plaintiff,**

**v.**                                                                 **No. CIV 12-03 JAP/ACT**

**RIO ARRIBA COUNTY, RIO ARRIBA**
**COUNTY SHERIFF'S DEPARTMENT,**
**JOE M. MASCAREÑAS, ADAM ARCHULETA,**
**and MARCOS ARMIJO, both in their official**
**capacities and as individuals,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Manual Valdez moves the Court to disqualify Defendants' counsel, Virginia

Anderman, and Anderman's law firm, Miller Stratvert P.A., from representing Defendants in this

case.[1] Motion to Disqualify at 1. Plaintiff argues that Anderman will be a necessary fact witness

at trial for Count VIII of Plaintiff's Complaint,[2] which Plaintiff brings under the New Mexico

Inspection of Public Records Act (IPRA) NMSA 1978, §§ 14-2-1 to -12 (1947, as amended

---

[1] On March 8, 2012, Plaintiff filed a MOTION TO DISQUALIFY DEFENSE COUNSEL (Doc. No. 16) (Motion to Disqualify). On March 21, 2012, Defendants filed DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL (Doc. No. 21) (Response). On April 10, 2012, Plaintiff filed a REPLY ON MOTION TO DISQUALIFY DEFENSE COUNSEL (Doc. No. 23) (Reply).

[2] On January 3, 2012, Plaintiff filed his COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS, CONSPIRACY, DEFAMATION, ABUSE OF PROCESS, MALICIOUS PROSECUTION, VIOLATION OF NEW MEXICO'S PEACE OFFICER'S EMPLOYER-EMPLOYEE RELATIONS ACT, VIOLATION OF NEW MEXICO'S WHISTLEBLOWER PROTECTION ACT, VIOLATION OF NEW MEXICO INSPECTION OF PUBLIC RECORDS ACT and REQUEST FOR PROSPECTIVE INJUNCTIVE RELIEF (Doc. No. 1) (Complaint). On March 7, 2012, Defendants filed DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT (Doc. No. 12) (Answer).

through 2011). Plaintiff explains that Anderman is the person who responded to Plaintiff's IPRA request on behalf of Defendants Rio Arriba County and Rio Arriba County Sheriff's Department and that Anderman's "testimony is vital to the presentation of a disputed issue in the case." Motion to Disqualify at 1, 3. In the Response, Defendants argue that Plaintiff's IPRA claim does not involve contested facts, only contested law, and can be decided by the Court as a matter of law based on the communications between the attorneys. Response at 2.

On June 18, 2012, the Court held a hearing on Plaintiff's Motion to Disqualify. Attorneys Charles Lakins and Alvin Garcia represented Plaintiff, Manual Valdez, who was present; and attorney Virginia Anderman represented Defendants. The Court has considered the parties' briefing, the oral arguments, and the relevant law. The Court concludes that Plaintiff's Motion to Disqualify should be denied without prejudice as premature at this time because it is not clear whether Anderman will be a necessary fact witness for the resolution of Plaintiff's IPRA claim.

## FACTUAL BACKGROUND[3]

### A.    The Warrant Sweep

On July 6, 2009, the Rio Arriba County Sheriff's Office and other law enforcement agencies conducted a "county-wide warrant round-up." Complaint ¶ 16. Teams of officers were given packets of warrants to serve. *Id.* Members of each team were not told which outstanding warrants were to be served by any other team. *Id.*  Plaintiff, who was a Lieutenant with the Rio Arriba County Sheriff's Office at the time, was paired with Bryan Martinez of the Española Police Department. *Id.* ¶ 17.

A team consisting of Officer Raymond Romero and one of the defendants, Detective

---

[3] The facts are taken from Plaintiff's Complaint unless otherwise noted and are included to provide context for Plaintiff's Motion to Disqualify.

Adam Archuleta, was given a warrant to serve on an individual named Julian Rendon.[4] *Id.* ¶ 18. In search of Julian, Romero and Archuleta went to home of Julian's brother, Joseph Rendon. *Id.* Joseph was not at home, but Romero and Archuleta spoke with Joseph's wife Josephine Rendon, who told the officers that Julian lived at Cook's Mobile Home Park in Española. *Id.* ¶ 19. After the officers left, Josephine called Joseph, who in turn called Julian. *Id.* ¶ 20. Joseph informed Julian that the police were coming to arrest him and advised Julian to cooperate with police. *Id.* Joseph also told Julian that he would call Plaintiff "to find out what was going on." *Id.* Joseph had known Plaintiff for a number of years, and Plaintiff was engaged to Joseph's step mother. *Id.* ¶ 21. When Joseph called Plaintiff, Joseph was connected directly to Plaintiff's voice mail. *Id.* ¶¶ 21-22. Plaintiff never spoke to Julian or Joseph during the warrant roundup. *Id.* ¶¶ 23-25.

Romero and Archuleta found Julian, who was ready and cooperative despite being intoxicated from the night before. *Id.* ¶ 26. On his way to booking, Julian told Romero that Julian knew the officers were coming because a friend, Plaintiff, had called to warn Julian. *Id.* ¶ 27. Romero asked Julian to repeat this information to Archuleta, which Julian did. *Id.* Archuleta then made a note, through central dispatch, of Julian's statements. *Id.* ¶ 28.

**B.      The Rio Grande Sun Articles and the Initiation of an Investigation into Plaintiff's Alleged Warning to Julian Rendon**

Several days later, Archuleta spoke to a reporter from the Rio Grande Sun, who was at central dispatch checking the public logs. *Id.* ¶ 34. When asked about the entry on July 6 regarding the "warning," Archuleta stated that there was a "big officer safety issue" involved. *Id.* ¶ 36. On July 16, 2009, the Rio Grande Sun published an article titled "Wanted Man Claims

---

[4] For clarity, the Court will refer to Julian Rendon, Joseph Rendon, and Josephine Rendon by their first names.

Sheriff's Lieutenant Alerted Him of Warrant Sweep." *Id.* ¶ 37. In the article, Defendant Joe Mascareñas, the Sheriff, is quoted as saying that he needed to investigate the incident to determine whether the allegations were true. *Id.* ¶ 41. Plaintiff first learned of the allegations that Plaintiff warned Julian about the warrant sweep from the Rio Grande Sun article. *Id.* ¶ 42.

On August 3, 2009, Defendant Mascareñas informed Plaintiff that Defendant Marcos Armijo, a Lieutenant who held a lower rank than Plaintiff, had been assigned to investigate the alleged warning Plaintiff gave to Julian. *Id.* ¶¶ 46-48. Animosity already existed between Defendant Armijo and Plaintiff. *Id.* ¶ 55. Additionally, Plaintiff had announced that he would run for Sheriff in the upcoming 2010 election. *Id.* ¶ 46.

**C.      Disciplinary Action and Grievance Proceedings**

On January 6, 2010, Defendant Mascareñas imposed discipline on Plaintiff after receiving an investigation report from Defendant Armijo. *Id.* ¶¶ 56-57. That same day, Plaintiff filed a written grievance. *See* DECISION (Doc. No. 1-1), at 1. On March 5, 2010, Hearing Officer Peggy Nelson held an evidentiary hearing on Plaintiff's grievance. *Id.* On March 19, 2010, the Hearing Officer issued her decision. *See id.* at 13. The Hearing Officer concluded that Rio Arriba County failed to sustain its burden of proof, upheld Plaintiff's grievance, and set aside the disciplinary action imposed on Plaintiff by Defendant Mascareñas. *Id.* at 12-13.

**D.      Plaintiff's IPRA Request**

On June 2, 2010, Plaintiff, through his attorney Alvin Garcia, sent an letter, addressed to "Rio Arriba County Sheriff Mascarenas" and the "Rio Arriba County Manager," requesting "public records pursuant to the Inspection of

4

Public Records Act." Doc. No. 20-1, at 1.[5] In the letter, Garcia requested three categories of information: (1) "all documents, records, exhibits and a copy of the audio recording/tapes that are compiled from Lt. Manuel Valdez's administrative grievance hearing that was held on March 5, 2010," (2) "a copy of any written correspondence, e-mails, letters or other communications between Sheriff Mascareñas, Lt. Marcos Armijo, or Adam Archuleta concerning the investigation and disciplinary matter initiated through an internal affairs investigation against Lt. Manuel Valdez in 2009," and (3) "a copy of the insurance policy for Rio Arriba County Sheriff's Department with One Beacon Government Insurance." *Id.*

On June 17, 2010, attorney Virginia Anderman sent a letter to Garcia, explaining that she had "been retained by Rio Arriba County's insurance company to represent the County" with regard to Plaintiff's claims. Doc. No. 20-1, at 2. Anderman informed Garcia that she was responding to Garcia's request for records under IPRA. *Id.* Anderman first notes that "almost all of the items you request in your June 2 letter were already provided to you in the context of the grievance hearing before former Judge Peggy Nelson, with the exception of the audio tapes from the hearing and the insurance policy." *Id.* Anderman then explains that while the "insurance policy can be produced" under IPRA, much of the requested information "is not subject to inspection, as stated in NMSA 1978 section 14-2-1(A) (2005), including letters of reference concerning employment, letters and memoranda of opinion in personnel files; and law

---

[5] Defendants attached correspondence between attorney Alvin Garcia and attorney Virginia Anderman as exhibits to Defendants' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS 1-VI AND VII-IX BY DEFENDANTS RIO ARRIBA COUNTY, JOE M. MASCARENAS, ADAM ARCHULETA AND MARCOS ARMIJO (Doc. No. 19), filed March 21, 2012. On April 18, 2012, Plaintiff filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. No. 25). On May 2, 2012, Defendants filed a REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I-VI AND VIII-IX (Doc. No. 28).

enforcement investigations." *Id.* Additionally, Anderman notes that the Standard Operating Procedures of the Rio Arriba County Sheriff's Department "provide that an internal investigation of a law enforcement officer shall remain confidential." *Id.* Although in Anderman's view many of the requested records were excepted from production under IPRA, Anderman informed Garcia that if he requested the grievance proceeding tapes in his capacity as Plaintiff's attorney, Anderman "would have no problem making copies" for Garcia. *Id.*

On June 23, 2010, Anderman sent a second letter to Garcia, stating that she was enclosing "a copy of . . .the County of Rio Arriba's present insurance policy as it relates to law enforcement liability." Doc. No. 1-20, at 4. Anderman concludes by saying, "I believe this is all the County is obligated to provide you pursuant to your Public Records Act request. I assume you will let me know if you disagree. Let me know if you have any questions." *Id.* At the June 18, 2012, hearing before this Court, Garcia informed the Court that he did not respond to the letter Anderman sent on June 17, 2010, or the letter Anderman sent on June 23, 2010.

In Count VIII of the Complaint, Plaintiff alleges that the Miller firm, on behalf of Rio Arriba County and the Rio Arriba County Sheriff's Department, denied Plaintiff's IPRA request and that neither Rio Arriba County nor the Rio Arriba County Sheriff's Department produced any documents. Complaint ¶¶ 138, 139.

## DISCUSSION

Plaintiff argues that Anderman is a necessary witness for his IPRA claim because "no other individual is available to be deposed or to testify at trial concerning the facts surrounding Defendants' handling of Plaintiff's IPRA request." Reply at 7. In Plaintiff's view, "Anderman's testimony is material to a disputed issue in this case; the evidence to be elicited is not available from any other source; Plaintiff cannot present the same or similar facts from another source; her

6

testimony is vital to the presentation of a disputed issue in the case; and her testimony is potentially prejudicial to her client's case." Motion to Disqualify at 3.

    In the Response, Defendants argue that Plaintiff's argument is anomalous, considering that one of Plaintiff's two attorneys of record, Alvin Garcia, is the person who made the IPRA request in the first place. Response at 2. If Anderman is a necessary fact witness for trial, presumably Garcia would also be necessary as the only person available to dispute Anderman's version of the facts.

    As for the merits of Plaintiff's Motion to Disqualify, Defendants argue that Anderman is unlikely to be called as a fact witness for the IPRA claim because it is the application of the law to the facts, not the facts themselves, that are contested. Response at 2. In Defendants' view, all operative facts are contained in the correspondence between Garcia and Anderman. *Id.* Thus, Defendants contend that Plaintiff's IPRA claim is better suited to a decision by the Court, which can apply IPRA's statutory scheme to the written documentation of what occurred in this case. *Id.* at 2-3.

## A.     Standard for Disqualification of Counsel

    The Tenth Circuit Court of Appeals has explained that

> [m]otions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. Federal district courts usually adopt the Rules of Professional Conduct of the states where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law. Therefore, motions to disqualify are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights.

*Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (quotation marks and citation omitted).

In this case, the United States District Court for the District of New Mexico has adopted the New Mexico Rules of Professional Conduct. *See* D.N.M.LR-Civ 83.9. In the Motion to Disqualify, Plaintiff relies primarily on Rule 16-307(A) NMRA (Lawyer as Witness) and Rule 16-110(A) NMRA (Imputation of Conflict of Interest). Because New Mexico patterned Rule 16-307 and Rule 16-110 after the ABA Model Rules of Professional Conduct, New Mexico's rules "reflect the national standard to be used in ruling on disqualification motions." *Cole*, 43 F.3d at 1383. Thus, the New Mexico Rules of Professional Conduct, the ABA Model Rules, and the cases interpreting those rules control the outcome of Plaintiff's Motion to Disqualify.

**B.      Standard of Review**

The Tenth Circuit Court of Appeals "will not disturb the trial court's factual findings regarding attorney conduct unless there is no reasonable basis to support those conclusions." *Cole*, 43 F.3d at 1383. But the Tenth Circuit reviews "de novo the trial court's interpretation of the applicable rules of professional responsibility." *Id.*

**C.      Disqualification of Anderman under Rule 16-307(A), "Lawyer as Witness"**

Plaintiff argues that disqualification of Anderman is warranted under Rule 16-307(A) NMRA, which provides that

> [a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

In *Chappell v. Cosgrove*, the New Mexico Supreme Court "enunciated for the first time the standard for assessing the merits of a disqualification motion under Rule 16-307." 1996-NMSC-020, ¶ 15, 121 N.M. 636, 916 P.2d 836. "[A]n attorney may not be disqualified under

Rule 16-307 absent a showing by the party seeking disqualification that the attorney's testimony is material to an issue in the case, that the evidence to be elicited from the attorney's testimony is not available from another source, and that the attorney's testimony is potentially prejudicial to his client's case." *Id.* ¶ 13. The Court explained that "[i]n transactional matters the attorney frequently is a witness to events that result in litigation, but that fact says little about the necessity of the attorney's testimony as a witness at trial." *Id.* The party seeking disqualification has the burden of establishing necessity. *Id.*

The Court in *Chappell* concluded that disqualification was not warranted because the party seeking disqualification did not prove that the attorney was a necessary fact witness. *Id.* ¶ 15. In *Chappell*, a neighborhood association brought a breach of contract suit against a development corporation, claiming that the development corporation breached a promise to build a park as part of a planned subdivision. *Id.* ¶¶ 1-3. Attorney Chappell was among five people who attended a meeting where the alleged promise was made. *Id.* ¶ 2. The neighborhood association sought to disqualify Chappell from representing the development corporation in the lawsuit. *Id.* ¶ 4. The development corporation argued that Chappell was not a necessary fact witness because there were four other individuals in addition to Chappell who could testify about what was said and done in the meeting. *Id.* ¶ 12. The Court agreed with the development corporation, explaining that the testimony of Chappell would be cumulative of that provided by other witnesses. *Id.* ¶ 14. The Court stated, however, that the neighborhood association would be allowed to renew its motion to disqualify in the future if further discovery uncovered facts demonstrating that Chappell was a necessary witness. *Id.* ¶ 15.

In this case, the Court is not persuaded at this time that Anderman's testimony is necessary to the resolution of Plaintiff's IPRA claim. Plaintiff's Motion to Disqualify should not

be granted unless (1) Anderman's testimony will resolve a contested issue of fact that is material to Plaintiff's IPRA claim, (2) the evidence to be elicited from Anderman's testimony is not available from any other source, and (3) Anderman's testimony could prejudice Defendants in this case. *See Chappell*, 1996-NMSC-020, ¶ 13. At this point, Plaintiff has not met his burden of showing that these three requirements are met. Accordingly, the Court will deny Plaintiff's Motion to Disqualify without prejudice as premature. But as in *Chappell*, the Court will allow Plaintiff to renew the Motion to Disqualify if further discovery demonstrates that the requirements for disqualification under Rule 16-307 and *Chappell* are met.

In order to expedite discovery related to Plaintiff's IPRA claim and to facilitate the prompt resolution of Plaintiff's case, the Court set several deadlines at the June 18, 2012, hearing. First, Defendants should produce to Plaintiff all records that Plaintiff initially requested under IPRA no later than June 28, 2012.[6] Once Plaintiff receives these records, Plaintiff should reconsider whether it is necessary to depose Anderman. If Plaintiff wishes to depose Anderman, Plaintiff should submit to the Court by July 20, 2012, a motion seeking leave to depose Anderman, detailing the areas of questioning that Plaintiff wishes to explore in Anderman's deposition, and explaining why the deposition is necessary. Defendants may file a Response by July 30, 2012.

**D.      Disqualification of the Miller Firm under Rule 16-110(A), Imputation of Conflicts of Interest**

Plaintiff argues that the entire Miller Stratvert law firm should be disqualified from representing Defendants due to a conflict of interest. Plaintiff explains that Anderman's legal

---

[6] At the June 18, 2012, hearing, Anderman explained that all documents Plaintiff previously requested are now subject to production due to this litigation, and Anderman offered to copy the documents and produce them to Plaintiff.

advice to Rio Arriba County regarding Plaintiff's IPRA request may subject Defendants to statutory damages for violation of IPRA, "thus necessarily placing her (along with the Miller Stratvert Law Firm) in an adversarial relationship with Defendants." Motion to Disqualify at 5. Plaintiff argues that disqualification of the entire Miller Stratvert law firm is warranted under Rule 16-110(A), which provides that

> [w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 16-107 [Concurrent Conflict of Interest] or 16-109 [Duties to Former Clients] . . . unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

The Court notes that Rule 16-109 applies to a lawyer's former client and is inapplicable to this case. Thus, it appears to the Court that Plaintiff is arguing that Anderman has a concurrent conflict of interest under Rule 16-107 that should be imputed to the Miller Firm under Rule 16-110(A). A concurrent conflict of interest "exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Rule 16-107(A).

Defendants respond that there is no conflict of interest; rather, Defendants' interests are aligned with those of Anderman and the Miller Stratvert law firm in that all seek dismissal of Plaintiff's IPRA claim. Response at 4. Additionally, Defendants note that under the Rules of Professional Conduct, "determining whether or not a conflict of interest exists between the lawyer and the client is primarily the responsibility of the lawyer and it is up to the lawyer to secure informed consent of the client." *Id.* at 5; *see* Rule 16-107(A), Committee Commentary [4] ("If a conflict arises after representation has been undertaken, the lawyer ordinarily must

11

withdraw from the representation, unless the lawyer has obtained the informed consent of the client[.]").

The Court has concluded that Anderman should not be disqualified at this time, and accordingly, the Court concludes that the Miller Stratvert law firm should not be disqualified by imputation. The Court will deny without prejudice Plaintiff's request for disqualification of the Miller Stratvert law firm.

**IT IS ORDERED THAT:**

(1)    Plaintiff's MOTION TO DISQUALIFY DEFENSE COUNSEL (Doc. No. 16) is DENIED without prejudice as premature;

(2)    By June 28, 2012, Defendants will produce to Plaintiff all records that Plaintiff previously requested under IPRA;

(3)    By July 20, 2012, Plaintiff may file a Motion seeking leave of Court to depose Virginia Anderman, and Defendants may file a Response by July 30, 2012; and

(4)    By June 25, 2012, each attorney of record in this case should read the Creed of Professionalism of the New Mexico Bench and Bar and should inform the Court in writing that, as an officer of the Court, the attorney has read the Creed and will be guided by it in future communications.

_James A. Parker_
_____
UNITED STATES DISTRICT COURT JUDGE